UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TED SHARPENTER, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AVISTA CORPORATION, ERIK J. ANDERSON, KRISTIANNE BLAKE, DONALD C. BURKE, REBECCA A. KLEIN, SCOTT H. MAW, SCOTT MORRIS, MARC RACICOT, HEIDI B. STANLEY, R. JOHN TAYLOR, JANET WIDMANN, HYDRO ONE LIMITED, OLYMPUS HOLDING CORP., and OLYMPUS CORP.,<br><br>Defendants. | NO. 2:17-cv-336<br><br>**CLASS ACTION COMPLAINT** |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 19, 2017 (the "Proposed Transaction"), pursuant to which Avista Corporation ("Avista" or the "Company") will be acquired by Hydro One Limited ("Parent") and its indirect wholly-owned subsidiaries,

CLASS ACTION COMPLAINT - 1

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Olympus Holding Corp. ("US Parent") and Olympus Corp. ("Merger Sub," and together with Parent and US Parent, "Hydro One").

2.  On July 19, 2017, Avista's Board of Directors (the "Board" or the "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Hydro One will acquire all of the outstanding shares of Avista common stock for $53.00 per share in cash.

3.  On September 14, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.  The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.  This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Avista common stock.

9. Defendant Avista is a Washington corporation and maintains its principal executive offices at 1411 East Mission Avenue, Spokane, Washington 99202. Avista's common stock is traded on the NYSE under the ticker symbol "AVA."

10. Defendant Erik J. Anderson ("Anderson") has served as a director of Avista since 2000.

11. Defendant Kristianne Blake ("Blake") has served as a director of Avista since 2000.

12. Defendant Donald C. Burke ("Burke") has served as a director of Avista since 2011.

13. Defendant Rebecca A. Klein ("Klein") has served as a director of Avista since 2010.

14. Defendant Scott H. Maw ("Maw") has served as a director of Avista since 2016.

15. Defendant Scott Morris ("Morris") is Chairman of the Board, President, and Chief Executive Officer ("CEO") of Avista.

16. Defendant Marc Racicot ("Racicot") has served as a director of Avista since 2009.

17. Defendant Heidi B. Stanley ("Stanley") has served as a director of Avista since 2006.

18. Defendant R. John Taylor ("Taylor") has served as a director of Avista since 1985.

19. Defendant Janet Widmann ("Widmann") has served as a director of Avista since 2014.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21. Defendant Parent is a corporation organized under the laws of the Province of Ontario, and a party to the Merger Agreement.

22.   Defendant US Parent is a Delaware corporation, an indirect wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

23.   Defendant Merger Sub is a Washington corporation, an indirect wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24.   Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Avista (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25.   This action is properly maintainable as a class action.

26.   The Class is so numerous that joinder of all members is impracticable. As of the close of business on July 18, 2017, there were approximately 64,411,244 shares of Avista common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27.   Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28.   Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29.   The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the

adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

31. Avista was incorporated in the territory of Washington in 1889. The Company is primarily an electric and natural gas utility with certain other business ventures. Avista had two reportable business segments, Avista Utilities and Alaska Electric Light and Power Company ("AEL&P").

32. Avista Utilities is an operating division of Avista that comprises the Company's regulated utility operations in the Pacific Northwest. Avista Utilities generates, transmits, and distributes electricity and distributes natural gas, serving electric to 379,000 customers and natural gas to 342,000 customers in eastern Washington and northern Idaho and natural gas customers in parts of Oregon. Its service territory covers 30,000 square miles, with a population of 1.6 million. It also supplies electricity to a small number of customers in Montana, most of whom are its employees who operate its Noxon Rapids generating facility. Avista Utilities also engages in wholesale purchases and sales of electricity and natural gas as an integral part of energy resource management and its load-serving obligation.

33. AEL&P is a utility providing electric services in Juneau, Alaska that is a wholly owned subsidiary and the primary operating subsidiary of Alaska Energy and Resources Company ("AERC"). Avista acquired AERC on July 1, 2014, and as of that date, AERC became a wholly owned subsidiary of Avista. Its primary customers include city, state, and federal governmental entities located in Juneau, as well as a mine located in the Juneau area. Most of AEL&P's customers are served on a firm basis while certain of its customers,

1  including its largest customer, are served on an interruptible sales basis. AEL&P maintains
2  separate rate tariffs for each of its customer classes, as well as seasonal rates.

3     34.    In addition to Avista Utilities and AEL&P, Avista has other businesses,
4  including sheet metal fabrication, venture fund investments, real estate investments, a company
5  that explores markets that could be served with liquefied natural gas, as well as certain other
6  investments of Avista Capital, which is a direct, wholly owned subsidiary of Avista. These
7  activities do not represent a reportable business segment and are conducted by various direct
8  and indirect subsidiaries of Avista, including Advanced Manufacturing and Development,
9  doing business as METALfx.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

11     35.    Defendants filed the Proxy Statement with the SEC in connection with the
12 Proposed Transaction.

13     36.    The Proxy Statement omits material information with respect to the Proposed
14 Transaction, which renders the Proxy Statement false and misleading.

15     37.    First, the Proxy Statement omits material information regarding Avista's
16 financial projections and the analyses performed by the Company's financial advisor, Merrill
17 Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch").

18     38.    The disclosure of projected financial information is material because it provides
19 stockholders with a basis to project the future financial performance of a company, and allows
20 stockholders to better understand the financial analyses performed by the company's financial
21 advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the
22 fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that
23 opinion as well as the key inputs and range of ultimate values generated by those analyses must
24 also be fairly disclosed.

25     39.    Although the Proxy Statement discloses certain financial projections of the
26 Company, it fails to disclose the Company's projected EBITDA for years 2017 through 2021,
27 as well as a reconciliation of non-GAAP EBITDA to its most comparable GAAP equivalent

and/or provide the line items necessary to calculate the Company's EBITDA. The disclosure of this information is necessary in light of the fact that BofA Merrill Lynch used the Company's EBITDA projections through year 2021 in its valuation analyses.

40. Further, the Proxy Statement discloses the Company's projected "utility gross margin" for years 2017 through 2021, but it fails to provide stockholders with the necessary reconciliation of this non-GAAP measure to its most comparable GAAP equivalent and/or provide the line items necessary to calculate the Company's projected utility gross margin.

41. The Proxy Statement also fails to disclose important projections that were used by BofA Merrill Lynch in its Discounted Cash Flow Analysis of Avista. Specifically, the Proxy Statement states that BofA Merrill Lynch performed its analysis by using the "standalone unlevered, after-tax free cash flows that the Company was forecasted to generate during the Company's fiscal years from the second half of 2017 through 2021 based on the Company management forecasts." The Proxy Statement, however, fails to, but must, disclose to stockholders the Company's projected unlevered free cash flows through year 2021, as well as the corresponding reconciliation of this non-GAAP measure and/or the constituent line items of unlevered free cash flows, which were a key input in BofA Merrill Lynch's Discounted Cash Flow Analysis.

42. Also with respect to BofA Merrill Lynch's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 5.1% to 5.8%; and (ii) the perpetuity growth rates implied from BofA Merrill Lynch's analysis.

43. With respect to BofA Merrill Lynch's Selected Publicly Traded Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies observed by BofA Merrill Lynch in its analysis.

44. With respect to BofA Merrill Lynch's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions observed by BofA Merrill Lynch in its analysis.

45. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Opinion of Financial Advisor;" and (ii) "Prospective Financial Information."

46. Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers.

47. The Proxy Statement states that, "[p]rior to or following the closing of the merger, however, certain of the Company's executive officers have had and may continue to have discussions, or may enter into agreements, with Hydro One, US Parent, Merger Sub and/or their respective affiliates regarding employment with, or the right to purchase or participate in the equity of, the surviving corporation or one or more of its affiliates." The Proxy Statement, however, fails to disclose the timing and nature of all communications regarding future employment of Avista's officers, including who participated in all such communications.

48. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

49. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of the Company's Directors and Executive Officers in the Merger."

50. Third, the Proxy Statement omits material information relating to the background leading to the Proposed Transaction.

51. The Proxy Statement indicates that, during the sale process, the Company entered into a nondisclosure agreement with "Party A" that included a standstill provision, which generally prevents counterparties from submitting offers to acquire the Company

without an invitation from the Board. The Proxy Statement, however, fails to disclose whether the standstill provision also contains a "don't ask, don't waive" provision that prevents Party A from even requesting a waiver of its standstill provision.

52. This information is important in light of the fact that the Board agreed to a no-solicitation provision in the Merger Agreement that contains the following provision: "The Company shall not terminate, amend, modify, waive or fail to enforce any provision of any 'standstill' or similar obligation of any Person unless the Company Board (or a duly authorized committee thereof) determines in good faith, after consultation with its outside legal counsel, that the failure to take such action would reasonably be expected to be inconsistent with its fiduciary duties under applicable Law." If Party A's standstill provision contains a "don't ask, don't waive" provision, the Board will be unaware of whether failing to waive the standstill provision is inconsistent with its fiduciary duties since Party A cannot even approach the Board to request a waiver of its standstill provision.

53. Without this information, stockholders may have the mistaken belief that, if Party A wishes to come forward with a superior offer, it is permitted to do so, when in fact it may be contractually prohibited from doing so. This is particularly important information in light of the fact that Party A initially offered up to $55 per share, which is a $2 per share premium to the merger consideration. As such, stockholders are entitled to the full disclosure of this information.

54. The omission of this material information renders the "Background of the Merger" section of the Proxy Statement false and misleading.

55. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Avista's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Avista**

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Avista is liable as the issuer of these statements.

58. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

59. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

60. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

61. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

62. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

63. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Hydro One**

64. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. The Individual Defendants and Hydro One acted as controlling persons of Avista within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Avista and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

66. Each of the Individual Defendants and Hydro One was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

68. Hydro One also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

69. By virtue of the foregoing, the Individual Defendants and Hydro One violated Section 20(a) of the 1934 Act.

70. As set forth above, the Individual Defendants and Hydro One had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of

their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 26, 2017

**BRESKIN JOHNSON & TOWNSEND, PLLC**

By: *s/ Roger Townsend*
Roger Townsend
1000 Second Avenue, Suite 3670
Seattle, Washington 98104
206-652-8660 Phone
206-652-8290 Fax
rtownsend@bjtlegal.com

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

*Attorneys for Plaintiff*